UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON
CIVIL ACTION NO.  6:24-CV-059-CHB

KENDRA FELTNER, in her capacity as
*Administratrix of The Estate of*
ANGELA VANOVER                                                                         PLAINTIFF


**COMPLAINT**
v.                                                      **and**
**DEMAND FOR TRIAL BY JURY**


KENTUCKY RIVER REGIONAL AUTHORITY;
      Serve:  Lonnie Brewer, Registered Agent
             200 Justice Drive
             Hazard, KY 41701

KENTUCKY RIVER REGIONAL JAIL, INC.;
      Serve:  Lonnie Brewer, Registered Agent
             ATTN: Lonnie Brewer, Administrator
             200 Justice Drive
             Hazard, KY 41701

PERRY COUNTY;
      Serve:  Scott Alexander
             481 Main Street
             Hazard, KY 41702

LONNIE BREWER in his individual and official capacities;
As Administrator of Kentucky River Regional Jail
      Serve:  Lonnie Brewer
             200 Justice Drive
             Hazard, KY 41701

ADAM DIALS in his individual and official capacities;
As Assistant Administrator employed by Kentucky River Regional Jail
      Serve: Adam Dials
             200 Justice Drive
             Hazard, KY 41701

BRIAN HOLLAND in his individual capacity;
      Serve:  Brian Holland
             200 Justice Drive

Hazard, KY 41701

KEVIN S. GREEN in his individual capacity;
      Serve:  Kevin S. Green
              200 Justice Drive
              Hazard, KY 41701

TYLER GIBSON in his individual capacity;
      Serve:  Tyler Gibson
              200 Justice Drive
              Hazard, KY 41701

JERALD PITTMAN in his individual capacity;
      Serve:  Jerald Pittman
              200 Justice Drive
              Hazard, KY 41701

LANDON GIBSON in his individual capacity;
      Serve:  Landon Gibson
              200 Justice Drive
              Hazard, KY 41701

KOURTNEY SLONE in her individual capacity;
      Serve:  Kourtney Slone
              101 Dennis Sandlin MD Cove
              Hazard, KY 41701

JOHN BEGLEY in his individual capacity;
      Serve:  John Begley
              200 Justice Drive
              Hazard, KY 41701

JAMES ISAAC in his individual capacity;
      Serve:  James Isaac
              200 Justice Drive
              Hazard, KY 41701

SCOTT STONE in his individual capacity;
      Serve:  Scott Stone
              200 Justice Drive
              Hazard, KY 41701

NICHOLAS HALL in his individual capacity;
      Serve:  Nicholas Hall
              200 Justice Drive
              Hazard, KY 41701

REGINA STRONG in her individual capacity;
     Serve:  Regina Strong
            200 Justice Drive
            Hazard, KY 41701

JESSICA GUERRA in her individual capacity;
     Serve:  Jessica Guerra
            200 Justice Drive
            Hazard, KY 41701

DAVID PRATT in his individual capacity;
     Serve:  David Pratt
            200 Justice Drive
            Hazard, KY 41701

BRANDON HONEYCUTT in his individual capacity;
     Serve:  Brandon Honeycutt
            200 Justice Drive
            Hazard, KY 41701

MATTHEW SHELDON in his individual capacity;
     Serve:  Matthew Sheldon
            200 Justice Drive
            Hazard, KY 41701

BRADLEY EVERIDGE in his individual capacity;
     Serve:  Bradley Everidge
            200 Justice Drive
            Hazard, KY 41701

QUANTUM HEALTH CARE ASSOCIATES, INC. in its private and official capacity
as medical provider contracted by Kentucky River Regional Jail
     Serve:  Michael W. Raichael, Registered Agent
            ATTN: Michael W. Raichael
            210 Black Gold Boulevard
            Hazard, KY 41701

ANTHONY YONTS, D.O.;
     Serve:  Anthony Yonts
            210 Black Gold Boulevard
            Hazard, KY 41701

SARAH HELPHINSTINE, D.O.;
     Serve:  Sarah Helphinstine
            210 Black Gold Boulevard

Hazard, KY 41701

SUE RIDDLE, N.P. in her individual capacity;
    Serve:  Sue Riddle
            210 Black Gold Boulevard
            Hazard, KY 41701

ASHLEY TAYLOR, N.P., in her individual capacity;
    Serve:  Ashley Taylor
            210 Black Gold Boulevard
            Hazard, KY 41701

CORBETT DIXSON, L.P.N, in his individual capacity;
    Serve:  Corbett Dixson
            34 US Hwy 68 E Unit A
            Benton, KY 42025

EDWINA MINIARD, L.P.N in her individual capacity;
    Serve:  Edwina Miniard
            34 US Hwy 68 E Unit A
            Benton, KY 42025

OZMA WOOLUM, L.P.N in her individual capacity;
    Serve:  Ozma Woolum
            210 Black Gold Boulevard
            Hazard, KY 41701

CHARLIE BINGHAM; in his individual capacity;
    Serve:  Charlie Bingham
            210 Black Gold Boulevard
            Hazard, KY 41701

and

JOHN DOEs 1 through 4                                           DEFENDANTS

_____

     Comes the Plaintiff, Kentra Feltner, in her capacity as the Administratrix of the Estate of

Angela Vanover, and for her Complaint herein, states as follows:


## **Parties**

1. Plaintiff, Kendra Feltner ("Feltner"), is the Administratrix of the Estate of Angela Vanover and was appointed on May 4, 2023 by the Perry County District Court.

2. On belief, Kentucky River Regional Jail Inc. and the Kentucky River Regional Jail Authority are the same entity (hereinafter "KRRJ"), which is a governmental entity that operates the Kentucky River Regional Jail in Hazard, Kentucky, which is located in Perry County, Kentucky. KRRJ is organized pursuant to KRS 441.800 and has the capacity to sue and be sued.

3. At all relevant times, Defendant Lonnie Brewer ("Brewer") was the Administrator at KRRJ. Brewer was responsible for the implementation, oversight, and supervision of policies, practices, and operations at the KRRJ. Brewer is sued in his individual and official capacities and acted under color of law and within the scope of his employment when engaging in the actions alleged in this Complaint.

4. At all relevant times, Defendant Adam Dials ("Dials") was an Assistant Jail Administrator at KRRJ, and had some responsibility for the implementation, oversight, and supervision of policies, practices, and operations at the KRRJ, and was also responsible for Angela Vanover's custody, care, and control while she was housed at the KRRJ. Dials is sued in his individual and official capacities and acted under color of law and within the scope of his employment when engaging in the actions alleged in this Complaint.

5. At all relevant times, Defendants Tyler Gibson ("T. Gibson"), Jerald Pittman ("Pitmann"), Kourtney Slone ("Slone"), John Begley ("Begley"), Landon Gibson ("L. Gibson"), Brian Holland ("Holland"), James Isaac ("Isaac"), Scott Stone ("Stone"), Nicholas Hall ("Hall"), Regina Strong ("Strong"), Jessica Guerra ("Guerra"), Kevin

Green ("Green"), and David Pratt ("Pratt") were employed by KRRJ in Hazard, Kentucky. These Defendants were responsible for Angela Vanover's custody, care, and control while she was housed at the KRRJ. Each of these Defendants is sued in his or her individual capacity and acted under color of law and within the scope of his or her employment when engaging in the actions alleged in this Complaint.

6.     At all relevant times, Defendants John Does 1 through 3 were employed by KRRJ in Hazard, Kentucky and were responsible for Angela Vanover's custody, care, and control while she was housed at the KRRJ and are sued in their individual capacities, and acted under color of law and within the scope of their employment when engaging in the actions alleged in this Complaint. Brewer, T. Gibson, Pittman, Slone, J. Begley, L. Gibson, Holland, Dials, Isaac, Stone, Hall, Strong, Guerra, Combs, John Does 1 through 3, and Pratt are collectively referred to as the "KRRJ Staff."

7.     On belief, KRRJ Staff were aware of Angela Vanover's need for medical care and directly and personally witnessed the deterioration of her mental and physical condition as described in this Complaint.

8.     Defendant Perry County is a governmental entity of the Commonwealth of Kentucky, governed by its Fiscal Court. Perry County jointly controls KRRJ and is responsible for the policies, practices, and customs of KRRJ. Defendant Perry County is liable for all torts statutory violations committed by KRRJ and its agents, employees, and KRRJ Staff pursuant to the doctrine of respondeat superior, and is responsible under Kentucky law, for any judgment entered against KRRJ or any of the KRRJ Staff.

9.     Defendant Quantum Healthcare Associates, Inc. ("Quantum") is a private company that at all relevant times herein contracted with KRRJ to provide healthcare to the detainees of

KRRJ. In this capacity, Quantum employed Defendants Anthony Yonts ("Yonts"), Sarah Helphinstine ("Helphinstine"), Sue Riddle ("Riddle"), Ashley Taylor ("Taylor"), Edwina Miniard ("Miniard"), Corbett Dixson ("Dixson"), and Ozma Woolum ("Woolum"), collectively referred to as "Quantum Staff".

10.   At all relevant times, Yonts and Helphinstine were licensed physicians employed by Quantum.

11.   At all relevant times, Riddle and Taylor were Licensed Nurse Practitioners employed by Quantum.

12.   At all relevant times, Yonts, Helphinstine, Riddle and Taylor were all designated as Facility Physicians by Quantum to provide medical services at KRRJ.

13.   Yonts, Helphinstine, Riddle, and Taylor are sued in their individual capacities and acted under color of law and within the scope of their employment when engaging in the actions alleged in this Complaint.

14.   At all relevant times, Defendant John Doe 4 was a licensed physician employed by Quantum.

15.   At all relevant times Defendant John Doe 4 was designated as a Facility Physician by Quantum to provide medical services at KRRJ.

16.   Defendant John Doe 4 is currently unidentified and authorized the medical treatment for Angela Vanover according to the Progress Note dated May 12, 2022 as described in this Complaint.

17.   Defendant John Doe 4 is sued in their individual capacity and acted under color of law and within the scope of their employment when engaging in the actions alleged in this Complaint.

18.     At all relevant times, Miniard, Dixson, and Woolum were Licensed Practical Nurses employed by Quantum and provided medical services at KRRJ. Miniard, Dixson, and Woolum are sued in their individual capacities and acted under color of law and within the scope of their employment when engaging in the actions alleged in this Complaint.

19.     At all relevant times, Defendant Charlie Bingham ("Bingham") was a Medical Assistant employed by Quantum and provided medical services at KRRJ. Bingham is sued in his individual capacity and acted under color of law and within the scope of his employment when engaging in the actions alleged in this Complaint.

## Jurisdiction and Venue

20.     Plaintiff is authorized to bring the claims in this action by 42 U.S.C. § 1983, Kentucky Common Law, and the general legal and equitable powers of this Court.

21.     This Court has original jurisdiction over the claims in this action authorized under 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331.

22.     This court has supplemental jurisdiction over the remaining claims authorized under Kentucky Common Law in this action pursuant to 28 USCS § 1367.

23.     On information and belief, all parties to this action reside within the Eastern District of Kentucky. A substantial portion of the events or omissions giving rise to the claims herein occurred in Perry County, which is assigned to the Southern Jury Division, London Docket.

24.     Venue is appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## Introduction

25. On July 23, 2022, Angela Vanover ("Angela") died while in the custody of KRRJ.

26. Angela was an inmate at KRRJ.

27. Angela was a human being.

28. While she was in the custody of KRRJ, Angela was entitled to healthcare comparable to that available to citizens in the surrounding community.

29. Angela was not free to choose where she would be incarcerated.

30. Angela was not free to choose whether or not to be an inmate at KRRJ.

31. Angela was not free to leave KRRJ whenever she wished.

32. Angela was not free to leave KRRJ to seek medical care from a provider of her choosing.

33. Angela was not free to choose who provided her medical care at KRRJ.

34. Angela was not free to write or select the policies, procedures and laws that should be observed in order to ensure her health and safety while in the custody of KRRJ.

35. Angela was not free to enforce or to require enforcement of the policies, procedures and laws that do exist that were meant to ensure her health and safety while in the custody of KRRJ.

36. Angela was not free to choose the Administrator of KRRJ who would be responsible for oversight of the operation of KRRJ in accordance with applicable law, the Kentucky Jail Standards, KRRJ Policy and Procedures Manual, with the oversight and guidance of the Kentucky Department of Corrections.

37. Angela was not free to ensure that the Administrator of the KRRJ met their responsibility of maintaining safety and security, seeing that financial obligations are managed,

supervising all other employees of the jail, and supporting the Board of Directors of the

KRRJ in its governance operations.

38.     Angela was not free to choose whom KRRJ employed as Deputy Jailers.

39.     Angela was not free to choose which Deputy Jailers employed by KRRJ would be

responsible for carrying out the daily tasks associated with her custody, care, and control.

40.     Angela was not free to ensure that the Deputy Jailers employed by KRRJ would be

properly trained or familiar with the rules and regulations applicable to KRRJ and her

custody, including the Kentucky Jail Standards and the KRRJ Policy and Procedures

Manual.

41.     Angela's death was not quick.

42.     Angela's death was not painless.

43.     Angela's death was the result of months of inhumane, degrading, cruel, negligent, and

indifferent treatment at the hands of the Defendants named in this Complaint.

44.     Based upon the treatment Angela received while in custody at the KRRJ, Angela's death

was foreseeable.

45.     In 2015 Angela received a liver transplant at UK Hospital. The operation was successful.

46.     After her successful liver transplant, Angela was prescribed immunosuppressant

medication.

47.     The immunosuppressant medication described in Paragraph 46 above was necessary due

to the liver transplant described in Paragraph 45 above.

48.     Angela was medically required to take immunosuppressant medication for the rest of her

life.

49. Angela complied with the medical instructions she received from her doctors, taking anti-rejection medications as directed by her doctors to prevent liver rejection.

50. On or about January 29, 2024, in her capacity as the Administratrix of Angela Vanover's Estate, Plaintiff requested any and all of Angela's medical records in the possession of KRRJ be delivered to the office of Plaintiff's counsel. A copy of this written request is attached as Exhibit 1.

51. On February 22, 2024. Plaintiff submitted written requests to KRRJ for certain public records pursuant to KRS Chapter 61. A copy of these written request are attached as Exhibit 2.

52. On or about March 8, 2024, KRRJ produced some of Angela's medical records to the Plaintiff.

53. While KRRJ did provide some of Angela's medical records, KRRJ did not provide all of Angela's medical records which were in their possession.

54. KRRJ did not provide any response to the requests for public records described in Paragraph 51 above before March 11, 2024.

55. On or about March 11, 2024, Plaintiff's Counsel sent notice to KRRJ that the requests described in Paragraph 51 above were outstanding and that Plaintiff had not received those records or a written response explaining the denial of those records. This notice was hand delivered to Brewer. A copy of this written notice is attached as Exhibit 3.

56. On or about March 20, 2024, ostensibly in response to the requests for public records described in Paragraph 51 above and to the notice described in Paragraph 55, KRRJ produced to Plaintiff's counsel a package containing records from KRRJ.

57. The records which KRRJ provided to Plaintiff as described in Paragraph 56 did not contain all of the records which were requested by Plaintiff on February 22, 2024 as described in Paragraph 51.

58. The records received on March 20, 2024, described in Paragraph 56, were not accompanied by an explanation for the denial of those records which were not provided. Such a written explanation is required by Kentucky law.

59. On belief, the withholding of Angela's medical records and the public records requested by Plaintiff was an intentional and overt act designed to conceal the conduct of the Defendants described in this Complaint.


## Background

60. On or about January 9, 2020, Angela was incarcerated in the Kentucky River Regional Jail.

61. On or about January 9, 2020, Interviewer Scott Stone ("Stone") administered a Standard Medical Questionnaire to Angela. A copy of this Standard Medical Questionnaire is attached as Exhibit 4.

62. In response to the questions on the Standard Medical Questionnaire, Angela answered "yes" to each of the following three questions:

   a. Do you have a serious medical condition that may require attention while you are here?

   b. Are you currently taking a prescription medication that may need continuation while you are here?

   c. Do you have any allergies to food or medication?

63. In response to the questions on the Standard Medical Questionnaire, Angela disclosed that she was the recipient of a liver transplant and that she was allergic to Codeine.

64. The Standard Medical Questionnaire was signed by Angela and by Officer Kristin Jacobs ("Jacobs").

65. Beginning on January 9, 2020, KRRJ knew that Angela was a liver transplant recipient.

66. Despite knowing that Angela was a liver transplant recipient and that she required continuing prescription medication, KRRJ did not attempt to learn what Angela's current medications were until several days after January 9, 2020.

67. On belief, Angela was not given her immunosuppressant medications at any point between January 9, 2020 and January 17, 2020.

68. On or about January 17, 2020, KRRJ finally sent a written request to Angela's pharmacy to obtain a list of her medications.

69. On belief, Angela was given her immunosuppressant medications at some point on or after January 17, 2020.

70. On belief, Angela was in the custody of KRRJ for the entire time span between January 9, 2020 and February 27, 2020.

71. KRRJ has records pertaining to Angela and to the period between January 9, 2020 and February 27, 2020, including, but not limited to: medical examination records, nurse's notes, progress notes, medical administration records, food logs, Sick Call Visit Records, Requests for Care, Physician Orders and Inmate Records.

72. KRRJ has withheld Angela's records described in Paragraph 71 from the Plaintiff.

73. KRRJ Staff and Quantum Staff are supposed to use MARs to document the daily administration of any and all prescribed medications to inmates.

74. The keeping of MARs is not optional.

75. KRRJ has MARs that record the medications administered to Angela by KRRJ Staff while she was in the custody of KRRJ in 2020.

76. KRRJ has not provided Plaintiff with any MARs for Angela from any times in 2020.

77. Angela was given prescribed medication by KRRJ Staff and/or by Quantum Staff while in the custody of KRRJ in 2020.

78. Angela was given immunosuppressant medication by KRRJ Staff and/or by Quantum Staff while she was in the custody of KRRJ in 2020.

79. The MARs described in Paragraph 75 are part of Angela's medical records.

80. The MARs described in Paragraph 75 record the administration of immunosuppressant medication to Angela.

81. On or about March 14, 2022, Angela was transferred from Pike County Detention Center to KRRJ.

82. According to the Intake & Release report, Angela was booked on March 16, 2022 at 2:17 PM.

83. When Angela was booked at KRRJ on March 16, 2022, the receiving detention officer did not perform a medical screening before Angela was placed in the inmate living area.

84. No completed medical screening form was signed by Angela on March 16, 2022.

85. No printed screening form for Angela was approved by the Quantum Staff on March 16, 2022.

86. According to the MARs included in the Medical Records KRRJ chose to provide, Angela did not receive any immunosuppressant medication while in the custody of KRRJ between March 16, 2022 and June 30, 2022.

87. KRRJ Staff are supposed to use MARs to document the daily administration of any and all prescribed medications to inmates.

88. A total of 8 MARs were provided by KRRJ for Angela. All of the MARs provided by KRRJ are from the year 2022.

89. Yonts is listed as the physician on each of the MARs described in Paragraph 88.

90. On belief, Yonts is listed as the physician on each of the MARs described in Paragraph 75.

91. Yonts authorized the administration of the medications listed in the MARs described in Paragraph88.

92. On belief, Yonts authorized the administration of the medications listed in the MARs described in Paragraph 75.

93. On March 16, 2022, Quantum knew that Angela was a liver transplant recipient.

94. On March 16, 2022, Quantum knew that Angela had been prescribed immunosuppressant medication in the past.

95. On March 16, 2022, Yonts knew or should have known that Angela was a liver transplant recipient.

96. On March 16, 2022, Yonts knew or should have known that Angela had been prescribed immunosuppressant medication in the past.

97. Angela did not refuse any immunosuppressant medication while she was in the custody of KRRJ between March 16, 2022 and July 19, 2022.

98. Angela was not offered her immunosuppressant medication between March 16, 2022 and July 19, 2022.

99. If Angela had refused any medication prescribed to her while in KRRJ's custody, KRRJ Staff were required to note that refusal in writing in Angela's medication log sheets or MARs as required by KRRJ's Policy and Procedures Manual.

100. No such recorded refusal is logged for any immunosuppressant medication in the MARs described in Paragraph 88 above.

101. KRRJ does not have any documentary proof that Angela refused any immunosuppressant medication between March 16, 2022 and July 19, 2022.

102. On March 16, 2022, Angela signed an Authorization to Release Healthcare Information ("ROI") authorizing KRRJ and Quantum to request a "med list" from Pike County Detention Center ("PCDC"). A copy of this ROI is attached as Exhibit 5.

103. On belief, the ROI described in Paragraph 102 was not sent to PCDC.

104. On belief, in the alternative, if the ROI described in Paragraph 102 was sent to PCDC, and any information was subsequently received by KRRJ from PCDC, it was not reviewed by KRRJ Staff or Quantum Staff.

105. On belief, instead of relying upon any written list of Angela's medications supplied by PCDC, KRRJ and Quantum chose to rely on a list of medications which Woolum compiled based upon a phone call she placed to PCDC.

106. On March 28, 2022, Miniard evaluated Angela and described this evaluation in a Progress Note dated March 28, 2022 ("PN1"). A copy of this is attached as Exhibit 6.

107. In PN1 Miniard lists no Chief Complaint. The description provided by Miniard states: "[Angela] [g]ot a bad migraine this morning due to Blood Pressure going up. Got a nosebleed. Would like her bp meds adjusted. Would like to have Tylenol for the headaches."

108. PN1 authorized an increase in blood pressure medication from 20mg of Lisinopril to 40mg and the administration of Tylenol.

109. Helphinstine signed PN1, thereby authorizing the change in medication.

110. KRRJ has other medical records related to the evaluation described in PN1.

111. KRRJ has withheld and/or concealed medical records related to the evaluation described in PN1.

112. On belief, Yonts did not see Angela to evaluate her for the medical complaints she communicated on March 28, 2022.

113. On belief, Helphinstine did not see Angela to evaluate her for the medical complaints she communicated on March 28, 2022.

114. On belief, Angela was not seen by any Quantum Staff other than Miniard to evaluate her for the medical complaints she communicated on March 28, 2022.

115. KRRJ chose to provide 2 MARs for March of 2022. The first MAR ("MAR1"), provided as Exhibit 7, records the administration of medication from March 17, 2022 through March 28, 2022. The second MAR ("MAR2"), provided as Exhibit 8, records the administration of medications from March 17, 2022 through March 31, 2022.

116. Yonts is identified as the physician authorizing the administration of the medication listed on both MAR1 and MAR2.

117. MAR2 indicates that on March 29, 30, and 31 of 2022, Angela was given two doses of Lisinopril, one 20mg dose, and an additional 40mg dose.

118. In fact, Angela was not prescribed more than 40mg per day on March 29, 30, and 31 of 2022.

119. It is illegal to administer prescription medication to patients without a prescription.

120. It is illegal for medical or jail staff to administer prescription medication in excess of the dosages prescribed by a medical doctor.

121. Giving a patient prescription medication in excess of the dosage prescribed by a medical doctor is a bad idea.

122. Giving a patient prescription medication in excess of the dosage prescribed by a medical doctor is negligent.

123. As described in Paragraph 117, Angela was given an extra 20mg of Lisinopril for three days in a row.

124. It took three days for KRRJ Staff and Quantum Staff to figure out that someone was giving Angela medication in excess of the dosage prescribed by a medical doctor.

125. When KRRJ Staff and Quantum Staff figured out that someone was giving Angela medication in excess of her prescribed dosage, they realized that someone had made a mistake.

126. This is evidence of Defendants gross negligence in the documenting and administration of prescription medications.

127. As of March 28, 2022, Angela had not been offered any immunosuppressant medication for 12 days.

128. The medical issues described in PN1 were a direct and proximate result of the gross negligence of KRRJ, KRRJ Staff, Quantum, and Quantum Staff in failing to administer to Angela the medication she required to stay alive.

129. The medical issues described in PN1 were a direct and proximate result of Yonts's and Helphinstine's gross negligence in failing to reasonably assess Angela and provide to her adequate medical care.

130. On April 4, 2022, Angela signed an ROI Authorizing "KRRJ-Nurse" to request "All healthcare information" from "Primary Healthcare – Dr. Bowling." A copy of this ROI is attached as Exhibit 9.

131. The ROI described in Paragraph 130 was sent to and received by Primary Care Centers of Eastern Kentucky ("Primary Care").

132. The person referred to as "Dr. Bowling" in the ROI described in Paragraph 130 is Dr. Kendall L. Bowling.

133. Primary Care responded to the ROI described in Paragraph 130 and provided KRRJ with all of Angela's healthcare information.

134. The healthcare information described in Paragraph 133 included records of the fact that Angela was a liver transplant recipient.

135. The healthcare information described in Paragraph 133 included records of the immunosuppressant medication she was prescribed.

136. On belief, the records provided to KRRJ by Primary Care were not reviewed by Defendants.

137. On belief, in the alternative, the records provided were reviewed but negligently ignored by Defendants.

138. On belief, in the alternative, the records provided to KRRJ by Primary Care were reviewed but intentionally ignored by Defendants with willful indifference to the health and safety of Angela.

139. According to records KRRJ chose to provide, on April 11, 2022, at 10:02 AM, Angela submitted a Sick Call Request ("Request 1") seeking medical treatment. A copy of this Request 1 is attached as Exhibit 10.

140. In Request 1, Angela stated "I need my meds changed. I'm having serious depression and mood swings."

141. According to records KRRJ chose to provide, on April 11, 2022, Miniard evaluated Angela and described this evaluation in a Progress Note dated April 11, 2022 ("PN2"). A copy of this Request is attached as Exhibit 11.

142. In PN2 Miniard lists the Chief Complaint as "Anxiety." The description provided by Miniard states "[Angela] would like something instead of Zoloft. It's not working. Would like Buspar increased. Wants to be away from everyone. States she is really depressed."

143. Notations on PN2 authorized an increase in Zoloft from 50mg to 100mg.

144. PN2 was signed by Taylor, authorizing the change in medication.

145. KRRJ has other medical records related to the evaluation described in PN2.

146. KRRJ has withheld and/or concealed medical records related to the evaluation described in PN2.

147. On belief, Yonts did not see Angela to evaluate her the medical complaints she communicated on April 11, 2022.

148. On belief, Taylor did not see Angela to evaluate her the medical complaints she communicated on April 11, 2022.

149. On belief, Angela was not seen by any other Quantum Staff other than Miniard to evaluate her for the medical complaints she communicated on April 11, 2022.

150. As of April 11, 2022, Angela had not been offered any immunosuppressant medication for 26 days.

151. The medical issues described in PN2 were a direct and proximate result of the gross negligence of KRRJ, KRRJ Staff, Quantum, and Quantum Staff in failing to administer to Angela the medication she required to stay alive.

152. The medical issues described in PN2 were a direct and proximate result of Yonts's and Helphinstine's gross negligence in failing to reasonably assess Angela and provide to her adequate medical care.

153. According to records KRRJ chose to provide, on April 27, 2022, Dixson evaluated Angela and described this evaluation in a Progress Note dated April 27, 2022 ("PN3"). A copy of PN3 is attached as Exhibit 12.

154. In PN3 Dixson lists the Chief Complaint as "Hoarseness, Sore throat." The description provided by Dixson states:

> Patient states she has nasal congestion, sore throat, and hoarseness, states it started yesterday evening. Patient also has low back pain throb radiates down left leg. Also has H. rash comes up on her right leg, been there for about a month but has gotten worse. Picture sent to messenger.

155. Notations on PN3 authorized Claritin 10mg daily for 14 days, Tylenol 650mg for 3 days, and Hydrocortisone Cream 1%.

156. Helphinstine signed PN3, thereby authorizing the change in medication.

157. PN3 has an additional notation that states "I do not see picture in jail chart."

158. On belief, this statement was written by Helphinstine.

159. No pictures of any kind were included in the medical records provided to Plaintiff by KRRJ.

160. KRRJ has other medical records related to the evaluation described in PN3.

161. KRRJ has withheld and/or concealed medical records related to the evaluation described in PN3.

162. On belief, based on the lack of any photographs in the Medical Records provided to Plaintiff, and the statement described in Paragraph 157, no picture of the rash described in PN3 was ever placed in Angela's medical records.

163. On belief, Helphinstine prescribed treatment of the rash described in PN3 without any visual inspection whatsoever, whether in person or by photographic means.

164. On belief, Yonts did not see Angela to evaluate her for the medical complaints she communicated on April 27, 2022.

165. On belief, Taylor did not see Angela to evaluate her for the medical complaints she communicated on April 27, 2022.

166. On belief, Angela was not seen by any other Quantum Staff other than Dixson to evaluate her for the medical complaints she communicated on April 27, 2022.

167. As of April 27, 2022, Angela had not been offered any immunosuppressant medication for 42 days.

168. The medical issues described in PN3 were a direct and proximate result of the gross negligence of KRRJ, KRRJ Staff, Quantum, and Quantum Staff in failing to administer to Angela the medication she required to stay alive.

169. The medical issues described in PN3 were a direct and proximate result of Yonts's and Helphinstine's gross negligence in failing to reasonably assess Angela and provide to her adequate medical care.

170. On belief, Yonts authorized the administration of the medications listed on MAR4 without visually evaluating the rash described in Paragraph 154.

171. According to records KRRJ chose to provide, on May 12, 2022, at 10:50 AM, Angela submitted a Sick Call Request ("Request 2") seeking medical treatment. A copy of this Request 2 is attached as Exhibit 13.

172. In Request 2, Angela states "Follow up on large amount of swelling and bad rash on mainly right leg but also on left. I really think I need blood work done."

173. The rash Angela referred to in Request 2 is the same rash that was described in Paragraph 154.

174. According to records KRRJ chose to provide, on May 12, 2022, Miniard evaluated Angela and described this evaluation in a Progress Note dated May 12, 2022 ("PN4"). A copy of PN4 is attached as Exhibit 14.

175. In PN4 Miniard lists the Chief Complaint as "Legs Swollen." The description provided by Miniard states:

> [Angela] has a rash on her legs, her legs are red & hot to touch & swollen. +2 pitting edema. HVI HTN. Very painful [illegible] was swollen up into thighs & hips. Can barley walk, has pain in back. Gets short of breath. Pic in jail chart.

176. A transplant recipient presenting with +2 pitting edema is evidence of a potentially serious medical condition requiring prompt medical treatment.

177. No picture of the rash described in PN4 was included in the medical records provided by KRRJ to Plaintiff.

178. On PN4, Defendant John Doe 4 wrote "check BMP" and prescribed Lasix and doxycycline.

179. Miniard noted a response to Angela's complaints in Request 2 by writing "meds ordered, blood work ordered."

180. Angela was correct, and she did need blood work done. Tragically, though a request for blood work was made and apparently authorized by a Facility Physician according to PN3, no blood tests were administered and no blood analysis was performed.

181. In the alternative, the blood test was administered, and the results indicated that Angela was suffering from liver and/or kidney failure at that time.

182. KRRJ has other medical records related to the evaluation described in PN4.

183. KRRJ has withheld and/or concealed medical records related to the evaluation described in PN4.

184. On belief, KRRJ and Quantum willfully and unlawfully withheld and/or concealed the picture referenced in Paragraph 175 in an attempt to conceal the severity of Defendants' gross negligence, willful indifference, and unlawful conduct.

185. On belief, Yonts did not see Angela to evaluate her for the medical complaints she communicated on May 12, 2022.

186. On belief, Defendant John Doe 4 did not see Angela to evaluate her for the medical complaints she communicated on May 12, 2022.

187. Defendant John Doe 4 did not follow up with Angela after May 12, 2022.

188. On belief, Angela was not seen by any other medical practitioner other than Miniard to evaluate her for the medical complaints she communicated on May 12, 2022.

189. As of May 12, 2022, Angela had not been offered any immunosuppressant medication for 57 days.

190. The medical issues described in PN4 were a direct and proximate result of the gross negligence of KRRJ, KRRJ Staff, Quantum, and Quantum Staff in failing to administer to Angela the medication she required to stay alive.

191.    The medical issues described in PN4 were a direct and proximate result of Yonts's and Helphinstine's gross negligence in failing to reasonably assess Angela and provide to her adequate medical care.

192.    According to records KRRJ chose to provide, on June 28, 2022, Miniard evaluated Angela and described this evaluation in a Progress Note dated June 28, 2022 ("PN5"). A copy of PN5 is attached as Exhibit 15.

193.    In PN5, Miniard lists nothing as the Chief Complaint. The description provided by Miniard states, "[Angela] would like to get meds increased, been very depressed, crying."

194.    Angela's depression was a symptom of medical complications resulting from the fact that she had not received the immunosuppressant medication required to keep her alive.

195.    Instead of actually evaluating Angela for her complaints in PN5, Riddle increased Angela's daily dosage of Zoloft to 150mg.

196.    During the time that Angela was incarcerated at KRRJ between March 16, 2022 to June 28, 2022, Quantum Staff did not actually assess Angela to learn the cause of her heightened depression, and just tripled her dosage of Zoloft instead.

197.    KRRJ has other medical records related to the evaluation described in PN5.

198.    KRRJ has withheld and/or concealed medical records related to the evaluation described in PN5.

199.    On belief, Yonts did not see Angela to evaluate her for the medical complaints she communicated on June 28, 2022.

200.    On belief, Riddle did not see Angela to evaluate her for the medical complaints she communicated on June 28, 2022.

201. On belief, Angela was not seen by any other medical practitioner other than Miniard to evaluate her for the medical complaints she communicated on June 28, 2022.

202. As of June 28, 2022, Angela had not been offered any immunosuppressant medication for 104 days.

203. The medical issues described in PN5 were a direct and proximate result of the gross negligence of KRRJ, KRRJ Staff, Quantum, and Quantum Staff in failing to administer to Angela the medication she required to stay alive.

204. The medical issues described in PN5 were a direct and proximate result of Yonts's, Helphinstine's, and Defendant John Doe 4's gross negligence in failing to reasonably assess Angela and provide to her adequate medical care.

205. No MAR was provided by KRRJ to Plaintiff for July, 2022.

206. On belief, and based on the inclusion of two MARs for each month throughout 2022, with the exception of the month in which Angela died, Defendants have willfully and unlawfully withheld and/or concealed the MARs for July 2022 in an attempt to conceal the seriousness of Defendants gross negligence, willful indifference, and unlawful conduct.

207. On or about July 12, 2022, Angela was "brought up front to booking for evaluation." According to a nurse's narrative note written by Miniard, Angela was acting confused at that time. A copy of this Note is attached as Exhibit 16.

208. Angela was acting confused on July 12, 2022 because at that point she had gone 118 days without receiving any immunosuppressant medication.

209. On or about July 12, 2022, Angela was taken from Cell 135 and moved to a detoxification cell.

210. Angela was placed into a wheelchair by other inmates at the direction of KRRJ Staff, and moved to the detoxification cell.

211. As of July 12, 2022, Angela had not eaten anything for approximately 3 days and had urinated on herself.

212. Angela remained in the detoxification cell for approximately 5 days. In that time:

   a.    Angela did not eat.

   b.    She urinated and defecated on herself.

   c.    She was left uncleaned, untreated, and unassisted for so long, she suffered physical wounds.

213. On or about July 17, 2022, Angela was taken back to be seen by Miniard again.

214. According to the Nurses Narrative Note Dated July 17, 2022, Miniard was "informed that inmate has not eaten in 8 days, she [Angela] took some drugs, and is not oriented to time & place." Miniard then states that she "Informed Brian Holand, jail staff that inmate [Angela] needs to go to ER for evaluation." A copy of this Note is attached as Exhibit 17.

215. Other than rumor, there was no basis to conclude that on July 17, 2022 Angela had taken any drugs other than the medications that were actually provided to her by KRRJ Staff and/or Quantum Staff.

216. Miniard did inform Holland that Angela needed to go to the Emergency Room.

217. Holland refused or failed to ensure that Angela was taken to the Emergency Room on July 17, 2022.

218. On July 17, 2022, Miniard did not contract KRRJ's Control Room and inform them of the situation, including the name of the inmate, the location of the emergency, and the nature of the emergency that required Angela to be taken to the Emergency Room.

219. Alternatively, if Miniard did contact KRRJ's Control Room to inform them of the situation concerning Angela, KRRJ's Control Room did not contact 911, the shift supervisor, the Facility Physician, and Brewer.

220. On July 17, 2022, after being informed by Miniard that Angela needed to go to the ER, On July 17, 2022 Holland did not contract KRRJ's Control Room and inform them of the situation, including Angela's name, location of the emergency, and the nature of the emergency that required Angela to be taken to the Emergency Room.

221. Alternatively, if Holland did contact KRRJ's Control Room to inform them of the situation concerning Angela, KRRJ's Control Room did not contact 911, the shift supervisor, the Facility Physician, and/or Brewer.

222. On July 17, 2022, KRRJ Staff did not contact 911, the shift supervisor, the Facility Physician, or Brewer.

223. On July 17, 2022, after being informed by Miniard that Angela needed to go to the ER, Holland did not arrange for transport to the Emergency Room.

224. Between 8:00 AM on July 18, 2022, and 10:50 AM on July 19, 2022, KRRJ and KRRJ Staff observed that Angela continued to have no appetite and that she consumed little food and water.

225. On July 19, 2022, at 10:50 AM KRRJ Staff had to assist Angela with feeding herself.

226. On July 19, 2022, sometime after Angela ate a little food with assistance as described in Paragraph 225, KRRJ moved Angela back to general population.

227. On July 19, 2022, Quantum Staff recorded in an unsigned Nurses Narrative Note that Angela was "Alert & oriented" and that she "walked with the help of Staff to cell, Talking to Staff." A copy of this Note is attached as Exhibit 18.

228. The claim that Angela was "alert and oriented" on July 19, 2022, was false.

229. The claim that Angela was "alert and oriented" on July 19, 2022, was a lie.

230. Quantum and KRRJ Staff recorded additional information detailing Angela's condition and treatment during July 2022, including, but not limited to: Progress Notes, MARs, Incident Reports, Daily Logs, Transport Orders, and written statements taken by other inmates incarcerated at KRRJ.

231. KRRJ chose not to provide Plaintiff with any other medical records for July 2022, other than the 3 Nurses Narrative Notes and a Food Log.

232. On belief, a number of the records described in Paragraph 230 have been concealed, altered, or destroyed by Quantum and/or KRRJ or their respective Staff.

233. On belief, the record of Angela's condition and mental state described in Paragraph 227 was not an accurate description of Angela's condition and the creation of that document was an overt action designed to conceal Quantum's and KRRJ's failure to provide adequate medical treatment and justify Quantum's and KRRJ's neglect, abuse, indifference, inaction, and gross negligence.

234. On belief, Miniard authored the Nurses Narrative Note described in Paragraph 227.

235. On belief, Miniard authored the Nurses Narrative Note described in Paragraph 227 in collusion with Brewer and other KRRJ Staff for the purpose described in Paragraph 233.

236. On July 20, 2022, Green carried Angela to an ambulance, which then transported her to the Hazard ARH Regional Medical Center ("ARH").

237. As of July 20, 2022, Angela had not been offered any immunosuppressant medication for 126 days.

238. On July 20, 2022, KRRJ blamed Angela for her medical state, suggesting that her medical condition was a result of an overdose. A copy of the County/Inmate Claim Form is Attached as Exhibit 19.

239. On belief, the suggestion that Angela's condition was the result of an overdose was an overt action designed to conceal Quantum's and KRRJ's failure to provide adequate medical treatment and justify Quantum and KRRJ's neglect, abuse, indifference, inaction, and gross negligence.

240. No Quantum Staff or KRRJ Staff administered NARCAN to Angela at any point between July 12, 2022, and July 20, 2022.

241. No one administered NARCAN to Angela at any time between July 12, 2022, and July 20, 2022, because no one actually believed that her condition was the result of an overdose.

242. After Angela was admitted into the ARH Emergency Department on July 20, 2022, unidentified KRRJ Staff notified ARH staff that Angela had been presenting an altered mental status for the past 8 days.

243. After Angela was admitted into the ARH Emergency Department on July 20, 2022, unidentified KRRJ Staff notified ARH staff that Angela had not taken her immunosuppressant medication for 126 days.

244. KRRJ Staff did not notify ARH staff that Angela had not eaten for 8 days as of July 17, 2022.

245. Upon Angela's admission to ARH on July 20, 2022, ARH staff observed that Angela's eyes and skin were yellow in color.

246.    Angela's yellow eyes and skin were obvious signs of a serious and life-threatening medical condition.

247.    Angela's eyes and skin were yellow before July 20, 2022, but KRRJ Staff and Quantum Staff either did not notice or did not care.

248.    Between July 20, 2022, and July 23, 2022, KRRJ Staff told hospital staff that Angela had been "refusing" her immunosuppressant medication.

249.    The statement described in Paragraph 248 was false.

250.    The statement described in Paragraph 248 was a lie.

251.    On belief, Between July 20, 2022, and July 23, 2022, Brewer told multiple inmates that Angela had been "refusing" immunosuppressant medication.

252.    Brewer's statements described in Paragraph 251 were false.

253.    Brewer's statements described in Paragraph 251 were lies.

254.    On belief, Brewer's false claims that Angela had refused her immunosuppressant medication were overt actions designed to conceal Quantum's and KRRJ's failure to provide adequate medical treatment and justify Quantum's, Quantum Staff's, KRRJ, and KRRJ Staff's neglect, abuse, indifference, inaction, and gross negligence.

255.    On July 20, 2022, Angela was flown from ARH to the University of Kentucky Hospital ("UK").

256.    On July 20, 2022, immediately upon Angela's admission to UK, UK staff placed Angela on mechanical ventilation.

257.    On July 20, 2022, UK administered a Serum Drug Screen. This test was negative for every substance that was tested.

258. Between July 20, 2022, and July 23, 2022, UK determined Angela was suffering from a multitude of medical issues, including but not limited to, liver failure, renal failure, abdominal bruising, pressure ulcers, dehydration, and infection.

259. On July 23, 2022, Angela died from septic shock resulting from liver failure.

260. Angela died because the Defendants did not take care of her.


## Damages

261. The actions and omissions of KRRJ, Quantum, and their respective Staff were unjustifiable, inexcusable, cruel, and in no way met the standards required for any Defendant named in this Complaint.

262. As a direct result of the actions and omissions described in this Complaint, Angela suffered for months before her death on July 23, 2022.

263. Angela's suffering increased every day she was not given the immunosuppressant medication she required to stay alive.

264. Without limitation, Angela's medical records and the records of KRRJ and Quantum document the progression of Angela's suffering.

265. Even when Angela was unable to feed herself, clean herself, or walk under her own power, the Defendants did little but watch as Angela slowly died.

266. Ultimately, the conduct described in this Complaint, in addition to the conduct yet to be uncovered, directly resulted in Angela's death.

267. The damages sought in this matter will be reflective of the substantial pain and loss Angela suffered at the hands of the Defendants.

## Count I - 42 U.S.C. § 1983
## Violation of Eighth Amendment (Cruel and Unusual Punishment):
## Failure to Provide Adequate Medical Care
## (Quantum, Quantum Staff, KRRJ, and KRRJ Staff)

268.  Each Paragraph of this Complaint is incorporated as if fully stated herein.

269.  Angela Vanover was a liver transplant recipient and suffered from a diagnosed medical condition that required her to take prescribed immunosuppressant medication every day to prevent liver failure.

270.  Angela spent 126 days in the Custody of KRRJ in 2022 and at no point within those 126 days did Angela receive the immunosuppressant medication prescribed to treat her medical condition of being a recipient of a liver transplant.

271.  Each and every one of the Defendants had a duty to ensure that Angela received timely and appropriate medical care.

272.  The Defendants did not provide Angela with timely and appropriate medical care.

273.  The Defendants did not even make a reasonable effort to provide Angela with timely and appropriate medical care.

274.  KRRJ, KRRJ Staff, Quantum, and Quantum Staff all had access to Angela's medical records identifying that she was the recipient of a liver transplant and was prescribed immunosuppressant medication, an intake questionnaire where Angela identified that she had a medical condition needing continuing care and medication, and Quantum and Quantum Staff had even administered immunosuppressant medication to Angela in 2020.

275.  Quantum, and Quantum Staff, were contracted to provide medical services at KRRJ and were acting under the color of law when they failed to provide Angela with her prescribed immunosuppressant medication, which was a violation of Angela's constitutional right to receive adequate medical care.

276. KRRJ, KRRJ Staff, Quantum, and Quantum Staff stood by while Angela stopped eating for 8 days, lay in her own waste for 5 days, and lost her orientation as to time and place.

277. A reasonable person would have known that someone who had not eaten for 8 days and was lying in their own excrement should be seen by a doctor immediately.

278. A reasonable person would have sought prompt medical treatment for someone who had not eaten for 8 days and was lying in their own excrement.

279. Angela's need for immediate medical care was so great and so obvious that even a lay person would have recognized it immediately.

280. The Defendants' collective conduct described in this Complaint was objectively unreasonable and outrageous, and was undertaken intentionally, with malice, and/or with reckless indifference to Angela's rights.

281. Nevertheless, even though Miniard recognized that Angela needed to be seen and evaluated by a doctor, Quantum Staff and KRRJ Staff failed to notify a Facility Physician or transport Angela to an Emergency Room as advised by Miniard, and this failure allwed Angela's condition to worsen.

282. Quantum, Quantum Staff, KRRJ, and KRRJ Staff knew the risk of harm to Angela if she did not receive appropriate and timely medical care, but willfully delayed for 3 more days before finally rushing Angela to the Emergency Room. This willful delay was a nothing short of a conscious disregard for Angela's serious need for medical attention violating Angela's constitutional right to receive adequate medical care.

283. The treatment that Angela received from Quantum, Quantum Staff, KRRJ, and KRRJ Staff was grossly incompetent and the proximate cause of months of pain and suffering, emotional distress, and eventually her death.

284. As a result of the Defendants' collective conduct, Angela suffered serious and painful injuries, including, but not limited to severe pain and suffering, emotional distress, and death.

285. All of Angela's physical injuries were proximately caused by the Defendants' actions.

286. The Defendants' conduct caused Angela to die.

287. The Defendants' neglect caused Angela to die.

## Count II - 42 U.S.C. § 1983
### Violation of the Fourteenth Amendment:
### Deprivation of Life Without Due Process
### (Quantum, Quantum Staff, KRRJ, and KRRJ Staff)

288. Each Paragraph of this Complaint is incorporated as if fully stated herein.

289. The actions of Quantum, Quantum Staff, KRRJ, and KRRJ Staff described in this Complaint were taken with deliberate indifference to Angela's life.

290. Each one of Quantum, Quantum Staff, KRRJ, and KRRJ Staff acted under the color of law when they engaged in the conduct referred to in Paragraph.

291. Angela's relationship with Quantum, Quantum Staff, KRRJ, and KRRJ Staff was not voluntary, and she had no control over their conduct or its effect on her life.

292. Angela's death on July 23, 2022, was the direct result of the actions of the Defendants as described herein, which constituted a deprivation of Angela's right to live without due process of law.

## Count III - 42 U.S.C. § 1983
### Failure To Intervene
### (Quantum, Quantum Staff, KRRJ, KRRJ Staff)

293. Each Paragraph of this Complaint is incorporated as if fully stated herein.

294. As described throughout this complaint, Quantum, KRRJ, and their respective Staff, were given multiple reasonable opportunities to prevent the violation of Angela's constitutional rights.

295. Quantum, Quantum Staff, KRRJ, and KRRJ Staff had reason to know that Angela's rights were being violated by not receiving adequate medical care Quantum, Quantum Staff, KRRJ, and KRRJ Staff all had knowledge that Angela was a transplant recipient and required immunosuppressant medication that she was not receiving.

296. Quantum, Quantum Staff, KRRJ, and KRRJ Staff all observed Angela's deterioration from March 16, 2022, until July 20, 2022.

297. Quantum, Quantum Staff, KRRJ, and KRRJ Staff had at least 126 opportunities to intervene.

298. Quantum, Quantum Staff, KRRJ, and KRRJ Staff had the means to take action, to investigate her symptoms, to review her records, to file a complaint, of to notify her family and prevent the further denial of Angela's constitutional right to adequate medical care.

299. Quantum, Quantum Staff, KRRJ, and KRRJ Staff intentionally stood by at least 126 times and failed to intervene which was objectively unreasonable.

300. As a direct and proximate result of these failures, Angela experienced months of physical and emotional pain and suffering, and eventually death.

### Count III - 42 U.S.C. § 1983
### Conspiracy
### (Quantum, Quantum Staff, KRRJ, KRRJ Staff)

301. Each Paragraph of this Complaint is incorporated as if fully stated herein.

302. Upon realization of the seriousness of Angela's medical condition and with the understanding of their respective violations of Angela's constitutional rights, Quantum, Quantum Staff, KRRJ, and KRRJ Staff collaborated with each other to achieve the singular purpose of continuing their denial of adequate medical and concealing their violations from discovery.

303. On belief, Quantum, Quantum Staff, KRRJ, and KRRJ Staff engaged in overt acts, including but not limited to those described in Paragraphs 227 through 235, 238 through 241, 244, 248, 251, and 254, and those acts were taken with the shared objective of depriving Angela of the right to adequate medical care and of her constitutional and statutory right to redress for the Defendants' unlawful conduct.

## Count IV – 42 U.S.C. § 1983
### *Monell* Claim against Perry County

304. Perry County is a governmental unit of the Commonwealth of Kentucky.

305. Perry County, and Perry County's officers, including, without limitation, the Judge/Executive of Perry County, have the power, authority, and responsibility to adopt and oversee policies, procedures, and practices for the KRRJ.

306. Perry County has a duty to ensure that the policies, procedures, and practices of KRRJ are adequate and appropriate to reasonably protect the life, health, safety, and welfare of persons in the custody of KRRJ.

307. The policies, procedures, and practices of Perry County directly contributed to Angela's injuries and death, because Perry County failed to adequately train, supervise, control and discipline the personnel under its supervision.

308.  Perry County was on notice that the policies, procedures, and practices of KRRJ were inadequate to reasonably protect the health, safety, and well-being of persons incarcerated at KRRJ, but Perry County did not take meaningful action to ensure changes that would better protect the health, safety, and well-being of persons like Angela.

309.  As a result of Perry County's policies and practices, Plaintiff suffered injuries, including severe physical pain, emotional distress, and death.

310.  The policies and practices of Perry County were maintained and implemented by Perry County with deliberate indifference to Angela's constitutional rights.


### Count V – 42 U.S.C. § 1983
### *Monell* Claim against KRRJ

311.  KRRJ is a governmental unit of the Commonwealth of Kentucky.

312.  KRRJ has a duty to ensure that KRRJ's employees, officers, and agents ensure that persons incarcerated at KRRJ are afforded the constitutional rights, statutory privileges, and other entitlements to which institutionalized persons are entitled under constitutional and federal and state law.

313.  KRRJ has a duty to ensure that it adopts such policies, procedures, and practices as will ensure that persons incarcerated at KRRJ are afforded the constitutional rights, statutory privileges, and other entitlements to which institutionalized persons are entitled under constitutional and federal and state law.

314.  KRRJ has the power, authority, and responsibility to adopt and oversee policies, procedures, and practices for the KRRJ.

315.   KRRJ has a duty to ensure that its policies, procedures, and practices are adequate and appropriate to reasonably protect the life, health, safety, and welfare of persons in the custody of KRRJ.

316.   The policies, procedures, and practices of KRRJ directly contributed to Angela's injuries and death, because KRRJ failed to adequately train, supervise, control and discipline the personnel under its supervision.

317.   KRRJ was on notice that its policies, procedures, and practices of KRRJ were inadequate to reasonably protect the health, safety, and well-being of persons incarcerated at KRRJ, but KRRJ did not take meaningful action to ensure changes that would better protect the health, safety, and well-being of persons like Angela.

318.   As a result of KRRJ's policies and practices, Angela suffered injuries, including severe physical pain, emotional distress, and death.

319.   The policies and practices of KRRJ were maintained and implemented by KRRJ with deliberate indifference to Angela's constitutional rights.


## Count VI – 42 U.S.C § 1983
### *Monell* Claim against Quantum

320.   Quantum is a private company that contracted with KRRJ, at all relevant times, to provide healthcare to the detainees of the KRRJ.

321.   Because Quantum undertook by agreement to provide medical treatment at KRRJ, Quantum was at all relevant times herein a governmental actor.

322.   Quantum, by way of its Board of Directors, has the power, authority and responsibility to develop and implement policies and procedures for the oversight of medical care provided by Quantum at KRRJ.

323. Quantum has a duty to ensure that the policies, procedures, and practices of Quantum are adequate and appropriate to reasonably protect the life, health, safety, and welfare of its patients at KRRJ.

324. The policies, procedures, and practices of Quantum were a direct and proximate cause of Angela's injuries and death, because Quantum failed to adequately train, supervise, control and discipline the personnel under its supervision.

325. On belief, the policies, procedures, and practices of Quantum were allowed to flourish because Quantum failed to provide adequate training and supervision of the personnel providing medical care to patients at KRRJ, and Quantum's failure to detect and adequately punish or discipline their employees misconduct and violations of appropriate standards of care.

326. On belief, Quantum maintains policies, procedures and practices that prioritize cost-saving measures at the expense of constitutionally adequate medical care with deliberate indifference to the violation of the constitutional rights of their patients.

327. As a result of Quantum's policies, procedures, and practices, Plaintiff suffered injuries, including severe physical pain, emotional distress, and death.


## Count VII – Medical Malpractice
### (Quantum, Yonts, Helphinstine, and John Doe 4)

328. Quantum is a company engaged in providing medical care to patients, including patients at KRRJ.

329. Angela was a patient of Quantum.

330. Angela was a patient of Yonts.

331. Angela was a patient of Helphinstine.

332.     Angela was a patient of John Doe 4.

333.     Quantum, Yonts, Helphinstine, and John Doe 4 each owed Angela a duty to provide her

         such medical care as was within the standard of care of other similarly-situated medical

         doctors in the community.

334.     Most medical doctors in the community actually see and assess their patients.

335.     Notwithstanding the duty to provide proper care to Angela: Quantum, Yonts,

         Helphinstine, and John Doe 4 each breached their duties to Angela by engaging in the

         following acts and omissions, all of which deviated from and fell below the accepted

         standard of medical care and treatment:

         a.  They negligently and carelessly failed to provide proper care in that they did not

             actually see and assess Angela, in order to determine the cause(s) of the medical

             complaints for which she sought treatment from them;

         b.  They failed to immediately schedule an appointment with Angela when she was

             booked at KRRJ, which appointment was medically necessary to ensure that a

             liver transplant recipient received the medical treatment and care she needed;

         c.  They failed to ensure that their personnel (including, without limitation, the

             Quantum Staff) possessed the requisite skill and knowledge to practice the care,

             pharmacy, or other medical care which was, or should have been, administered to

             Angela;

         d.  They did not provide her with the immunosuppressant medication which she

             needed to stay alive;

         e.  They did not review her medical history and chart to see what medications she

             required;

f.  Despite knowing that Angela's medical condition was worsening, did not bother to schedule an assessment to determine the cause(s) of the rash described in Paragraph 154, the increased and serious depression reported as described in Paragraphs 140, 142, and 193.

336.  Quantum, Yonts, Helphinstine, and John Doe 4 are each vicariously liable for the negligent acts of their employees and agents, under the doctrine of respondeat superior.

337.  Quantum, Yonts, Helphinstine, and John Doe 4 were each negligent in ways not presently known to the Plaintiff, but which may become known to the Plaintiff at or before trial.

338.  As a result of the negligence of Quantum, Yonts, Helphinstine, and John Doe 4, Angela:

a.  suffered serious and painful bodily injuries, great physical pain and suffering, mental anguish, emotional distress, and the loss of capacity for the enjoyment of life;

b.  died; and

c.  was otherwise hurt, injured, and caused to sustain losses.

339.  Plaintiff has complied with the requirements of KRS 411.167 by attaching a Certificate of Merit attached hereto as Exhibit 20.


## Count VIII - Nursing Malpractice
### (Quantum, Riddle, Taylor, Miniard, Dixson, and Woolum)

340.  At all relevant times, Defendants Riddle and Taylor were Licensed Nurse Practitioners employed by Quantum.

341.  At all relevant times, Defendants Miniard, Dixson, and Woolum were licensed practical nurses employed by Quantum.

342. Riddle, Taylor, Miniard, Dixson, and Woolum each owed Angela a duty to provide her such nursing care as was within the standard of care of other similarly-situated nursing staff in the community.

343. Notwithstanding the duty to provide proper nursing care to Angela: Quantum, Riddle, Taylor, Miniard, Dixson, and Woolum each breached their duties to Angela by engaging in the following acts and omissions, all of which deviated from and fell below the accepted standard of medical care and treatment:

    a. They negligently and carelessly failed to provide proper care in that they did not actually request or seek an appointment with a doctor for Angela, in order to assess and determine the cause(s) of the medical complaints for which she sought treatment;

    b. They failed to immediately schedule Angela for an appointment with a doctor when she was booked at KRRJ, which appointment was medically necessary to ensure that a liver transplant recipient received the medical treatment and care she needed;

    c. They failed to possess the requisite skill and knowledge to practice the care, pharmacy, or other medical care which was, or should have been, administered to Angela;

    d. They did not provide her with the immunosuppressant medication which she needed to stay alive;

    e. They did not review her medical history and chart to see what medications she required;

f. Despite knowing that Angela's medical condition was worsening, did not bother to schedule an assessment to determine the cause(s) of the rash described in Paragraph 154, the increased and serious depression reported as described in Paragraphs 140, 142, and 193;

g. Did not notice that Angela's eyes and skin were yellow as described in Paragraphs 245 and 246, or in the alternative, did observe that her eyes and skin were yellow, and did not think it was important.

344. Quantum, Riddle, Taylor, Miniard, Dixson, and Woolum were each negligent in ways not presently known to the Plaintiff, but which may become known to the Plaintiff at or before trial.

345. As a result of the negligence of Quantum, Riddle, Taylor, Miniard, Dixson, and Woolum, Angela:

a. suffered serious and painful bodily injuries, great physical pain and suffering, mental anguish, emotional distress, and the loss of capacity for the enjoyment of life;

b. died; and

c. was otherwise hurt, injured, and caused to sustain losses.


**Count IX - Negligence**
**(All Defendants)**

346. Each of the paragraphs of this Complaint are incorporated as if fully stated herein.

347. Angela sustained injuries, severe pain and suffering, and death, as a result of the negligence of the Defendants herein.

348. The Defendants knew, or through the exercise of reasonable diligence would have known, that their actions were likely to result in injury or death to Angela or persons similarly situated to her.

349. Each of Defendants owed Angela the duty to act as a reasonable similarly-situated person would act.

350. Each of the Defendants breached that duty, in the ways described in this Complaint and in ways not yet known to the Plaintiff but which may be learned at or before trial herein.

351. All of Angela's injuries described herein, including her death, were proximately caused by the negligence of each of the Defendants.

## Count X - Wrongful Death
### (All Defendants)

352. Each of the paragraphs of this Complaint are incorporated as if fully stated herein.

353. Angela died on July 23, 2022.

354. Quantum, Quantum Staff, KRRJ, and KRRJ Staff negligently, recklessly, willfully, and unjustifiably caused the death of Angela through the wrongful conduct described herein, including but not limited to the conduct described in Paragraphs 43, 83, 86 through 91, 93 through 97, 112 through 114, 136 through 138, 147 through 149, 163 through 166, 170, 180, 181, 185 through 188, 195, 196, 199 through 201, 211 through 212, and 217 through 223.

355. The conduct referenced by Paragraph 354 was intentional and undertaken with malice, willfulness, and reckless indifference to Angela's rights.

356. Angela had a valid claim for damages against the Defendants at the time of her death.

357.     As Administratrix of the Estate of Angela Vanover, Kendra Feltner has authority under Kentucky Law to bring this claim for Wrongful Death on behalf of Angela's heirs at law.

## Count XI – Intentional Infliction of Emotional Distress
### (All Defendants)

358.     Each of the paragraphs of this Complaint are incorporated as if fully stated herein.

359.     Defendants owed Plaintiffs a duty to follow state statutes and regulations, policies and procedures in the implementation of adequate medical care to Angela.

360.     Defendants breached their duty when they failed to ensure Plaintiffs' health and safety.

361.     Defendants recklessly or intentionally acted in an extreme and outrageous manner causing severe emotional distress.

362.     The above-described actions of Defendants are outrageous and offend generally accepted community standards of decency and morality.

363.     As a result of the Defendant's actions, Angela suffered physical pain, emotional injury, humiliation, embarrassment, resulting in damages in excess of the jurisdictional limits of this Court.

**WHEREFORE**, Plaintiff respectfully demands the following:

1.     Judgment against Defendants and in favor of Plaintiffs in an amount to be determined at trial, in excess of the jurisdictional limits of this Court, and sufficient to compensate Plaintiff for the following elements of damages:

    a.     Mental and physical pain and suffering;

b.      Punitive damages in proportion to the willful and grossly negligent conduct of the Defendants allowed pursuant to 42 U.S.C. § 1983;

2.    All additional expenses incurred by Plaintiffs, including but no limited to, travel expenses, necessitated by Defendants' negligent acts;

3.    Pre-judgment and post-judgment interest on all amounts awarded herein;

4.    Costs and expenses incurred herein, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1983;

5.    Trial by Jury; and

6.    Any and all other relief to which Plaintiff may appear entitled.


Respectfully submitted,


/s/Joshua S. Harp
Joshua S. Harp (KY Bar No. 91386)
Baughman Harp, PLLC
401 West Main Street, Suite 1
Frankfort, KY 40601
P.  502-227-2271
F.  502-352-2936
E.  harp@harplawoffice.com
*Counsel for Plaintiff*